UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

R. A-G, by her parent, R.B., individually and on
behalf of a class of others (parents and
students) similarly situated,

     Plaintiffs,

  v.

BUFFALO CITY SCHOOL DISTRICT BOARD OF
EDUCATION, and PAMELA C. BROWN,
Superintendent,

     Defendants.

**DECISION AND ORDER**
12-CV-960S

## I.  INTRODUCTION

   Plaintiffs commenced this putative class action alleging, among other things, that

Defendants' policies and procedures with respect to educationally disabled children

attending school in the Buffalo City School District violate the rights of those children and

their parents under the Individuals with Disabilities Education Improvement Act ("IDEA"),

20 U.S.C. § 1400 *et seq.*  Presently before this Court is Plaintiffs' motion to certify class

pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Also before this Court is

Defendants' cross-motion to stay class certification pending resolution of an as yet unfiled

summary judgment motion.  For the reasons that follow, Defendants' motion is denied and

Plaintiffs' motion is granted.

## II.  BACKGROUND

**A.     Statutory Background**

The purpose of IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).  A key component to achieving this goal is the individualized education program, or "IEP," which is a written statement jointly created annually by a team consisting of educators and the parents of the disabled child.  20 U.S.C. §§ 1401 (14), 1414(d).  In New York, that team is referred to as a Committee on Special Education, or a "CSE."  N.Y. Educ. Law § 4402; 8 N.Y.C.R.R. § 200.3(a)(1); see T.B. v. Haverstraw-Stony Point Cent. Sch. Dist., – F. Supp. 2d –, 2013 WL 1187479, *1 (S.D.N.Y. 2013). The CSE examines the student's specific individual needs and develops an IEP that is " 'reasonably calculated to enable the child to receive educational benefits.' "  R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 175 (2d Cir. 2012), cert denied, – U.S. –, 2013 WL 1418840 (June 10, 2013)(quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 207, 102 S. Ct. 3034, 73 L. Ed.2d 690 (1982)); D.N. v. N.Y.C. Dep't of Educ., 905 F. Supp. 2d 582, 584 (S.D.N.Y. 2012).

An IEP must include "a statement of the special education and related services and supplementary aids and services" that will be provided in order for the child to be able to advance toward the specified annual goals. 20 U.S.C. § 1414 (d)(1)(A)(i)(IV). "The term 'related services' means transportation, and such developmental, corrective, and other supportive services . . . as may be required to assist a child with a disability to benefit from

special education." 20 U.S.C. § 1401(26)(A); see Cedar Rapids Community Sch. Dist. v. Garret F. Ex rel. Charlene F., 526 U.S. 66, 73, 119 S. Ct. 992, 143 L. Ed. 2d. 154 (1999). "As a general matter, services that enable a disabled child to remain in school during the day provide the student with the meaningful access to education that Congress envisioned." Garret F. ex rel. Charlene F., 526 U.S. at 73 (internal quotation marks omitted). Related services therefore include a range of  supportive services, such as transportation, speech pathology and audiology services, psychological services, physical and occupational therapy, therapeutic recreation, social work services, counseling services, and diagnostic and evaluative medical services. Id.; see 20 U.S.C. § 1401(26), (33).

The provisions of IDEA also "ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400 (d)(1)(B); Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 482 (2d Cir. 2002). "[P]arents of students with disabling conditions are guaranteed 'both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate.' " Cave v. East Meadow Union Free School Dist., 514 F.3d 240, 245 (2d Cir. 2008) (quoting Honig v. Doe, 484 U.S. 305, 311-12, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)). Parents are also entitled to present complaints regarding "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," and to an impartial due process hearing on that complaint. 20 U.S.C. § 1415(b)(6)(A), (f)(1)(A); Polera, 288 F.3d at 482.

In New York, this hearing process consists of a two-tier administrative system for reviewing IEPs. Cave, 514 F.3d at 245. "First, an impartial hearing officer is selected from

a list of certified officers and appointed by the local board of education or the competent state agency to conduct the initial hearing and issue a written decision." Id.  A parent may appeal that decision to a state review officer of the New York Education Department. Id. (citing Heldman ex rel. v. Sobel, 962 F.2d 148, 152 (2d Cir. 1992)); see 20 U.S.C. § 1415(g); N.Y. Educ. Law § 4404(1)-(2).   Any party aggrieved after utilizing these procedures may "bring a civil action with respect to the complaint presented" in state or district court. 20 U.S.C. § 1415(i)(2)(A).

**B.    Factual Background**

Plaintiff R. A-G. is a student in the Defendant Buffalo City School District ("the District") and is classified by the District as learning disabled. (Compl. ¶¶ 2, 20, Docket No. 1.)  The District's CSE prepared the Plaintiff student's IEP for the 2011-2012 school year in May 2011. (Compl. ¶ 21.) Her IEP indicated that she required integrated co-teaching services daily and three 30 minute sessions of related services per six day cycle, specifically speech and language small group therapy. (Compl. ¶ 22-23; Attorney Aff. of Bruce A. Goldstein, Esq., Ex. A, Docket No. 5 (Plaintiff student's IEP).)  At that time, the start date for both co-teaching and the related services was identified as September 7, 2011, the first week of school.  (Compl. ¶ 24; Goldstein Aff. Ex A.)

Prior to the commencement of the 2011-2012 school year, the District sent Plaintiff R.B., R. A-G's parent, a written notice of a "Proposed Amendment to IEP without a Committee Meeting." (Compl. ¶ 28; Goldstein Aff. ¶ 9, Ex. B.) The notice was signed by the CSE Chairperson, and indicated that the Committee was proposing to amend the IEP in order to correct certain "clerical errors on the 2011-2012 IEP following the 2011 Annual Review." (Goldstein Affid. ¶ 9, Ex. B.)  The proposed changes included altering the start

4

date of the Plaintiff student's speech and language therapy to September 19, 2011 "to follow district policy." (Id.) A form was included to allow the Plaintiff parent to sign and authorize the purported clerical changes without an additional meeting.  (Id.) The Plaintiff parent was informed that if written consent was not received to amend the student's IEP, the District would schedule a meeting with the CSE. (Id.)  The Plaintiff parent did not sign the consent form, but no CSE meeting was ever scheduled.  (Compl. ¶¶ 32-34; Goldstein Aff. ¶ 12.)   An additional notice was dated September 22, 2011, which included a handwritten notation changing the related services start date from September 19th to September 21st.  (Goldstein Aff. ¶ 11, Exs. C, D at 5.)  The parties do not dispute that, although co-teaching of the Plaintiff student commenced at the beginning of the school year, her related services did not begin until September 23, 2011.  (Compl. ¶ 34; Aff. of Kim H. Curtin ¶ 7, Docket No. 24.)

The Plaintiff parent, through counsel, requested an administrative hearing to address alleged violations of the Plaintiff student's rights. (Compl. ¶ 37; Goldstein Aff. ¶ 15.)  It was alleged in the administrative complaint that: (1) speech and therapy services were not provided until three weeks after the start of the school year; (2) the Plaintiff student was not consistently receiving class notes daily as required by her IEP; and (3) the CSE failed to recommend occupational therapy services as required by a prior agreement. (Affirm. of Jeffrey J. Weiss, Esq. ¶ 4, Ex. A (due process complaint notice).) It was further asserted that the failure to implement the IEP resulted in a denial of the Plaintiff student's right to the free, appropriate public education (commonly referred to as a "FAPE"). (Id.)

A hearing  was held before an impartial hearing officer in December 2011. (Compl. ¶ 38; Weiss Affirm. ¶ 5, Ex. B)  During his opening statement at the hearing, Plaintiffs'

counsel asserted that the District had a "district wide policy that related services will not begin until the third week of school, regardless of what the IEP says," which counsel argued was in violation of federal law and state regulations. (Weiss Affirm. Ex. D (pg. 24).) The hearing officer noted that he was constrained to the issues raised in the administrative complaint, and was not "to determine whether the city school district or the City of Buffalo is following laws generally." (Id. (pg. 27-29).) In a written decision, the hearing officer determined that "[t]he minor flaws in [the] District's special education program offered to Student, as raised in Parent's Due Process Complaint . . . fail to establish that Student was denied her entitlement to a [FAPE]," and dismissed the due process complaint. (Weiss Affirm. Ex. B (pg. 14).)

Plaintiffs appealed the decision to a state review officer. (Compl. ¶ 40; Weiss Affirm. Ex. E.) Plaintiffs argued on appeal that the Plaintiff student was denied a FAPE because, among other things, the District's "across-the-board" policy of delaying commencement of related services resulted in a delay of services. (Weiss Affirm. Ex. E (pg. 5).) The state review officer declined to review this issue in the absence of an agreement to expand the scope of the impartial hearing to include issues not raised in the administrative complaint. (Id. at 8.) With respect to the issues that were raised, the state review officer found, after independent review, that there was no material failure in the District's implementation of the Plaintiff student's IEP for the 2011-2012 school year. (Compl. ¶¶ 40-41; Weiss Affirm. Ex. E (pg. 12).)

The Plaintiff parent commenced the instant action on behalf of herself and the Plaintiff student in this Court in October 2012. (Compl. ¶¶ 14, 43.) Plaintiffs allege that "Defendants maintain and implement a policy by which the District does not provide the

6

related services to be provided via students' IEPs during the first two weeks of the school year (or longer), irrespective of any individual student's need for such related services at the inception of the school year." (Compl. ¶ 5.)  They claim that, as a result of this policy, the District substantially failed to provide the student class with a FAPE; failed to make individual assessments of students' needs; denied parents meaningful participation in the decision-making regarding their children; and failed to implement students' related services as required by IEPs, all in contravention of the mandates of IDEA. (Compl. ¶¶ 61-70.) Plaintiffs further allege that, in failing to provide services to disabled students when services for non-disabled students were provided, the District discriminated against the student members of the class in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. (Compl. ¶ 72.)

Plaintiffs therefore seek a judgment declaring that Defendants' policy or practice of delaying related services deprives Plaintiffs, as well as similarly situated students and parents, of their statutory rights with respect to the prompt receipt of services at the beginning of the school year, receipt of services based on an individual assessment of each disabled student's need, and the meaningful participation of parents in the IEP process.  (Compl. at pg. 13.) Plaintiffs further seek: (1) a preliminary and permanent injunction precluding Defendants from continuing the unlawful practice or policy of delaying related services; (2) an order directing that compensatory educational services, specifically additional related services, be provided to the Plaintiff student to compensate for the unlawful policy; and (3) costs, disbursements, and reasonable attorneys' fees.  (Id.)

Plaintiffs presently move for certification of a class consisting of "children, and parents of children, between the ages of 5 and 21 residing in the Buffalo City School

7

District, present and future, who are classified as disabled per the definition in [IDEA] . . . and receive related services." (Compl. ¶ 43.)  Defendants cross-move for a stay of the Court's resolution of this motion or, alternatively, denial of class certification.

## III. DISCUSSION

**A.    Defendants' Cross-Motion to Stay Determination of Class Certification**

Defendants request a stay of Plaintiffs' motion for class certification pending filing and resolution of a summary judgment motion on the merits of the action. (Defs' Mem of Law at 6-7, Docket No. 24-3.)   Rule 23(c) of the Federal Rules of Civil Procedure directs that a court must determine whether to certify an action as a class action "[a]t an early practicable time after a person sues or is sued as a class representative."  The issue of certification is generally considered prior to any summary judgment determination. Ironforge.com v. Paychex, Inc., 747 F. Supp. 2d 384, 388 n. 1 (W.D.N.Y. 2010); Mendez v. The Radec Corp., 260 F.R.D. 38, 45 (W.D.N.Y. 2009); see Schweizer v. Trans Union Corp., 136 F.3d 233, 239 (2d Cir. 1998).  Defendants are correct, however, that because the purpose of early certification is for the benefit of defendants, a defendant may waive this protection and move for a judgment on the merits before a decision on certification is made.  Ironforge.com, 747 F. Supp. 2d at 388 n. 1; Mendez, 260 F.R.D. at 45; Larsen v. JBC Legal Group, P.C., 235 F.R.D. 191, 193-94 (E.D.N.Y. 2006).  Indeed,  "[t]here is nothing in Rule 23 which precludes the court from examining the merits of plaintiff's claims on a proper Rule 12 motion to dismiss or Rule 56 motion for summary judgment simply because such a motion precedes resolution of the issue of class certification." Schweizer,

136 F.3d at 239 (citation omitted).

Nonetheless, the Court declines to exercise its discretion to enter a stay at this time. Initially, no dispositive motion is currently pending. Although Defendants point out this is because the parties are engaged in mediation, this does not alter the fact that they seek a stay based on speculation regarding the success of as yet unbriefed motion for summary judgment. Moreover, it appears that several of Defendants' anticipated dispositive arguments have already been raised in their opposition to Plaintiffs' motion for certification, such as the assertion that the class claims of systemic violations are unexhausted and therefore not properly before this Court.

With respect to this issue, the fact that the Second Circuit has previously labeled IDEA's exhaustion rule as jurisdictional weighs in favor of denying the stay. Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 203 (2d Cir. 2007) (citing Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 483 (2d Cir. 2002)). This Court has a duty to consider whether subject matter jurisdiction exists at the earliest opportunity, even if not raised by the parties. Fed. R. Civ. P. 12(h)(3); Cave v. East Meadow Union Free School Dist., 514 F.3d 240, 250 (2d Cir. 2008). Notably, however, more recent Second Circuit decisions have highlighted Supreme Court case law requiring the more careful distinction between jurisdictional requirements and "mandatory claims-processing rules," stating that a clear conclusion on whether the failure to exhaust under IDEA is a jurisdictional bar or a waivable affirmative defense has not yet been reached. Coleman, 503 F.3d at 203-4 (citing Eberhart v. United States, 546 U.S. 12, 16, 126 S. Ct. 403, 163 L. Ed. 2d 14 (2005)); Paese v. Harford Life and Acc. Ins. Co., 449 F.3d 435, 444 n. 2 (2d Cir. 2006).

Resolution of the jurisdictional nature of exhaustion is not required at this time. See Baldessarre ex rel. Baldessare v. Monroe-Woodbury Cent. Sch. Dist., 496 Fed. App'x 131, 133 (2d Cir. 2012) (acknowledging that exhaustion is still a jurisdictional rule in this Circuit, but noting that it is a distinction without a difference where defendants timely raise the issue).  Even if exhaustion is an affirmative defense, courts must nonetheless consider potential defenses in assessing certification factors. Myers v. Hertz Corp.. 624 F.3d 537, 551 (2d Cir. 2010), *cert denied*, 132 S. Ct. 368 (2011); Public Employees' Retirement Sys. of Mississippi v. Goldman Sachs Group, Inc., 280 F.R.D. 130, 137 (S.D.N.Y. 2012).  Thus, exhaustion is properly considered in the context of the certification motion, and delaying resolution of this issue for the purpose of allowing Defendants to raise it again in a future dispositive motion is unnecessary. Indeed, because the exhaustion and certification issues are fully briefed, the resolution of these arguments will not be a waste of the parties' and judicial resources, as Defendants assert, but will instead help frame the proceedings moving forward, inasmuch as "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Wal-Mart Stores, Inc. v. Dukes, – U.S. –, 131 S. Ct 2541, 2552, 180 L. Ed. 2d 374 (2011) (internal quotation marks omitted).  Defendants' motion to stay a determination on certification pending the filing and resolution of a dispositive motion on the merits is therefore denied.

**B.     Plaintiffs' Motion for Class Certification**

In "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (citation omitted), Rule 23 of the Federal Rules of Civil Procedure permits individuals to sue as representatives of an aggrieved class. Floyd v. City of New York, 283 F.R.D. 153, 160 (S.D.N.Y. 2012). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." Myers, 624 F.3d at 547; see Levitt v. J.P. Morgan Securities, Inc., 710 F.3d 454, 465 (2d Cir. 2013). Rule 23(a) provides that a class action is appropriate only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); Levitt, 710 F.3d at 464. "[C]ertification is proper only if the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Wal-Mart Stores, Inc., 131 S. Ct at 2551 (internal quotation marks omitted). In addition to these prerequisites of numerosity, commonality, typicality, and adequacy, a proposed class action must fall within one of the three class categories described in Rule 23(b). Finally, courts have also added an implied ascertainability requirement that the class description is sufficiently definite for a determination whether a particular individual is a member of the proposed class. Flores v. Anjost Corp., 284 F.R.D. 112, 122 (S.D.N.Y. 2012); Catanzano by Catanzano v. Dowling, 847 F. Supp. 1070, 1078 (W.D.N.Y. 1994).

Plaintiffs seek to represent all children, and parents of such children, between the

11

ages of 5 and 21 who reside in the District and receive related services due to their classification as disabled within the meaning of IDEA. (Compl. ¶ 43.) Plaintiffs assert that the questions of law and fact common to this class are whether Defendants' policy or practice of not providing related services in the first two weeks of the school year to those students whose IEPs call for such services constitutes a systemic violation of rights guaranteed by IDEA and New York State Education Law and regulations.  (Pl's Mem of Law at 4-5, Docket No. 5-8.)  Specifically, Plaintiffs allege that this policy or practice violates the student's right to receive related services, the right to an individualized determination of need, meaningful participation of a student's parents in that determination, and the timely implementation of required services. (Id.)

As discussed above, Defendants argue that this Court lacks subject matter jurisdiction over Plaintiffs' claims of systemic violations because Plaintiffs failed to exhaust administrative remedies with respect to these claims.  (Def's Mem of Law at 8-13, Docket No. 24-3.)  Defendants further argue that Plaintiffs cannot satisfy the prerequisites of Rule 23(a) with respect to Plaintiffs' remaining allegation that Defendants failed to implement the Plaintiff student's IEP, the only exhausted claim. (Id. at 13-22.)

1.    Exhaustion of Administrative Remedies

Plaintiffs' class action claims are brought under IDEA and Section 504 of the Rehabilitation Act.  "It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court." J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 112 (2d Cir. 2004), cert denied, 544 U.S. 968 (2005); see 20 U.S.C. § 1415(i)(2)(A).  "The exhaustion requirement 'prevents courts from undermining the administrative process and permits an agency to bring its expertise to

12

bear on a problem as well as to correct its own mistakes.' " Polera v. Board of Educ. of Newburgh Enlarged City School Dist., 288 F.3d 478, 487 (2d Cir. 2002) (quoting Heldman v. Sobol, 962 F.2d 148, 159 (2d Cir. 1992)). It is only after these procedures have been exhausted that a suit in state or federal court may be commenced. 20 U.S.C. § 1415(i)(2)(A); Cave, 514 F.3d at 245.  Further, "[t]he exhaustion requirement also applies where plaintiffs seek relief under other federal statutes when relief is also available under the IDEA." J.S. ex rel. N.S., 386 F.3d at 112; see 20 U.S.C. § 1415(l).  Thus, the exhaustion requirement also applies to Plaintiffs' additional Section 504 Rehabilitation Act claim in the instant case.  J.S. ex rel. N.S., 386 F.3d at 112.

Here, Plaintiffs' administrative complaint alleged a failure to implement the Plaintiff student's IEP where: (1) her speech and therapy services were not provided until three weeks after the start of the school year; (2) the Plaintiff was not consistently receiving class notes daily as required by her IEP; and (3) the CSE failed to recommend occupational therapy services as required by a prior agreement. (Weiss Affirm. Ex. A.)  As Defendants note, of these assertions only the alleged failure to timely provide related speech and therapy services appears in the present civil complaint, and although Plaintiffs' counsel raised the issue of the improper policy at the hearing, it was not considered by either the impartial hearing officer or the state review officer.  Defendants therefore argue that only the individual claim of delay in providing related services to the Plaintiff student may be considered by this Court. (Def's Mem of Law at 8-13.)

Plaintiffs respond that all claims have been exhausted to the extent possible and, in any event, their allegations of Defendants' systemic violations fall within an exception to the exhaustion requirement. (Pl's Reply Mem of Law at 4-6, Docket No. 28-1.)  As the

party asserting that an exception to this exhaustion requirement applies, Plaintiffs bear the burden of proof. J.S. ex rel. N.S., 386 F.3d at 112; Polera, 288 F.3d at 488 n. 8.

Although judicial review is normally not available under § 1415(i)(2)(A) until all administrative proceedings are complete, the Supreme Court has recognized that "parents may bypass the administrative process where exhaustion would be futile or inadequate." Honig v. Doe, 484 U.S. 305, 326-27, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988); J.S. ex rel. N.S., 386 F.3d at 112; Heldman on Behalf of T. H. v. Sobol, 962 F.2d 158-59 (2d Cir. 1992). The Second Circuit in turn has specified that exhaustion is excused in cases where: (1) it would be futile to use the administrative due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to law; or (3) defendants allegedly failed to implement services specified or otherwise clearly stated in a student's IEP. Mrs. W. v. Tirozzi, 832 F.2d 748, 756 (2d Cir. 1987); see J.S. ex rel. N.S.. 386 F.3d at 113; Polera, 288 F.3d at 488-89; Kalliope R. Ex rel. Irene D. v. N.Y.S. Dep't of Educ., 827 F. Supp. 2d 130, 138 (E.D.N.Y. 2010). These exceptions are grounded in the legislative history of IDEA, which recognized that there would be cases where exhaustion would be either legally or practically futile. Heldman, 962 F.2d at 158 n. 11.

"The futility exception is particularly relevant in actions, such as the one at hand, that allege systemic violations of the procedural rights accorded by IDEA." Heldman, 962 F.2d at 158-59; Mrs. W., 832 F.2d at 757 (systemic violations claims unable to be adequately addressed at a due process hearing fall within the recognized categories); see Kalliope R., 827 F. Supp. 2d at 138. Systemic violations are exempted from the exhaustion requirement because they "are often the result of implemented policies and procedures, and administrative hearing officers do not have the ability to alter already existing policies."

14

S.W. by J.W. v. Warren, 528 F. Supp. 2d 282, 294 (S.D.N.Y. 2007). Indeed, because "claims of generalized violations . . . lend themselves well to class action treatment," J.G. by Mrs. G. v. Bd. of Educ. of Rochester City Sch. Dist., 830 F.2d 444, 447 (2d Cir. 1987), exempting such claims from the individual administrative review process achieves the goal of promoting efficiency.  J.S. ex rel. N.S., 386 F.3d at 113.

Here, Plaintiffs have alleged systemic violations.  They allege that by maintaining a policy by which the District will not provide related services during the first two weeks of the school year, irrespective of any individual student's need for such related services during that time, Defendants have precluded the CSE from making individual assessments of students' needs; denied parents meaningful participation in the decision-making regarding their children; and prevented the implementation of students' related services otherwise required by IEPs. (Compl. ¶¶ 61-70.)  Thus, the argument is that the District adopted a policy that violates IDEA by hindering the IEP development and implementation process, requiring focus on the existence and scope of the alleged policy, "not whether a particular IEP is appropriate for a particular student." Kalliope R., 827 F. Supp. 2d at 139; see J.S. ex rel. N.S., 386 F.3d at 115 (exhaustion not required where complaint challenged defendants' total failure to prepare and implement an IEP, not the contents thereof). Indeed, the allegations here are consistent with acts already recognized by the Second Circuit to constitute exempt systemic violations, such as the failure to perform timely evaluations and reevaluations of disabled children, the failure to notify parents of meetings as required by law, and the failure to perform legally required responsibilities in a timely manner, including the provision of related services.  J.S. ex rel. N.S.. 386 F.3d at 115.

Further, in considering whether exhaustion is exempted, courts "consider whether

15

administrative review would further the goals of developing facts making use of available expertise, and promoting efficiency." J.S. ex rel. N.S., 386 F.3d at 113 (citing Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1303 (9th Cir. 1992)); see Kalliope R., 827 F. Supp. 2d at 137 (primary reason for exhaustion requirement is to utilize expertise of education administrators).  As discussed, the Court will not be required to review whether a particular student's IEP was insufficient to meet his or her particular educational needs, therefore the specialized educational expertise provided by the administrative process is not required.  Kalliope R., 827 F. Supp. 2d at 139; J.S., 386 F.3d at 114-5.

Finally, based on his statements during the administrative hearing, it appears that the impartial hearing officer in the instant case believed that the issue of a District-wide policy was outside the scope of the hearing, not only because it was not raised in the administrative complaint, but also because Plaintiffs' assertions of a systemic problem within the District were outside the officer's jurisdiction.  (Weiss Affirm. Ex. D (pg. 28-29).)  The hearing officer stated that there were other "avenues to have, perhaps, the state education department review whether there are systemic problems within the district," such as issues of whether the District was "following laws generally, but that is not within [the hearing officer's] domain or jurisdiction." (Id.) Thus, the record supports the assertion that it would have been futile for Plaintiffs to have pursued their systemic claims in this administrative proceeding.

Accordingly, contrary to Defendants' contention, the Court is not precluded from considering whether certification of Plaintiffs' "claims arising from an alleged 'systemic' decision to begin providing disabled students with related services after the first two weeks of school" is appropriate.  (Defs' Mem of Law at 10.)

16

2.    Rule 23(a)

As noted above, "[t]o be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a): numerosity, commonality, typicality, and adequacy." Brown v. Kelly, 609 F.3d 467, 475 (2d Cir. 2010). Here, Plaintiffs seek only declaratory and injunctive relief on behalf of the class for the claimed violations of IDEA and Section 504 of the Rehabilitative Act.  Compensatory educational services, as alleged in the Complaint and clarified in Plaintiffs' reply brief, are sought on behalf of only the currently named student Plaintiff, and therefore this claim will not be considered for certification.  (Compl. at 13; Pls' Reply Mem of Law at 8-9.); see Fed. R. Civ. P. 23(c)(4) (a class action may be maintained with respect to particular issues where appropriate).

i.    *Commonality*

Because the issue of commonality is the most sharply disputed, the Court will begin its Rule 23(a) analysis here.  A party seeking certification must show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  This determination of commonality requires a plaintiff to establish that the claims of the proposed class depend upon a common contention or contentions "capable of classwide resolution – which means that determination of [the] truth or falsity [thereof] will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, Inc., 131 S. Ct. at 2551. Notably, although systemic violations "lend themselves well to class action treatment," J.G. by Mrs. G., 830 F.2d at 447, mere conclusory allegations of such violations will not automatically satisfy Rule 23(a)'s commonality requirements. M.D. ex rel. Stukenberg v. Perry, 675 F.3d 832, 844 (5th Cir. 2012).

Defendant argues that commonality cannot be established because only students

17

who were denied a FAPE by the two week delay in related services could be members of the class. (Def's Mem of Law at 16-19.)  In so arguing, Defendants focus on the two-part inquiry for determining if a particular student has been denied a FAPE.  This inquiry requires a court to first consider whether IDEA's procedural requirements have been met, and then determine whether the IEP developed for the student through these procedures was reasonably calculated to enable the student to receive educational benefits.  Rowley, 458 U.S. at 206-7;  Grim v. Rhinebeck Central Sch. Dist., 346 F.3d 377, 381 (2d Cir. 2003).  Thus, there are two types of claims under IDEA: procedural and substantive. Bryant v. N.Y.S. Educ. Dep't, 692 F.3d 202, 212 (2d Cir. 2012), cert denied, 133 S. Ct. 2022 (2013).   The Supreme Court has recognized that compliance with the "significant procedural provisions of IDEA 'would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.' " Grim, 346 F.3d at 381 (quoting Rowley, 458 U.S. at 206).  Nonetheless, as Defendants note, "not all procedural violations rise to the level of the denial of a 'free appropriate public education,' the primary substantive requirement of the statute." A.M. ex rel. J.M. v. N.Y.C. Dep't of Educ., 840 F. Supp. 2d 660, 685 (E.D.N.Y. 2012) (quoting Grim, 346 F.3d at 381), aff'd, 2013 WL 906110 (2d Cir. 2013).

This two-part inquiry for reviewing an administrative decision regarding an objection to an individual IEP, however, does not preclude a finding of commonality. J.S. ex rel. N.S. v. Attica Cent. Sch., No. 00-CV-513S, 2006 WL 581187, *5 (W.D.N.Y. Mar. 8, 2006) (collecting cases certifying IDEA class actions involving alleged systemic violations); see Grim, 346 F.3d at 381.  The claims at issue in the instant case are ones that, as discussed, are exempt from this administrative process specifically because they are systemic, not

individual.  In such cases, courts have held that the disparate impact of a challenged policy or regulation does not defeat class certification. L.V. v. N.Y.C. Dep't of Educ., No. 03-Civ-9917, 2005 WL 2298173, *3-4 (S.D.N.Y. Sept. 20, 2005); Ray M. by Juana D. v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 884 F. Supp. 696, 699 (E.D.N.Y. 1995); Louis M. by Velma M. v. Ambach, 113 F.R.D. 133, 136 (N.D.N.Y. 1986);  Andre H. v. Ambach, 104 F.R.D. 606, 612 (S.D.N.Y. 1985); see P.V. v. School Dist. of Philadelphia, 289 F.R.D. 227, 233-34 (E.D. Pa. 2013); C.G. v Commonwealth of Pa. Dep't of Educ., No. 06-cv-1523, 2009 WL 3182599, *5-6 (M.D. Pa. Sept. 29, 2009).  "This is especially true where[, as here,] plaintiffs request declaratory and injunctive relief against a defendant engaging in a common course of conduct toward them, and there is therefore no need for *individualized* determinations of the propriety of injunctive relief." Baby Neal for and by Kanter v. Casey, 43 F.3d 48, 57 (3d Cir. 1994) (emphasis in original) (cited in Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997)); see generally Port Authority Police Benevolent Assoc. v. Port Authority, 698 F.2d 150, 153 (2d Cir. 1983) (denial of class certification improper where proposed class sought review of the policy or practice of denying promotion to employees who criticized the defendant employer, not the promotions themselves).

Similarly, a finding of commonality here would not, as Defendants argue, run afoul of the Supreme Court's ruling in Wal-Mart, Inc. v. Dukes. 131 S. Ct. 2541.  In Wal-Mart, Inc., the Court found that a policy of allowing local supervisors to exercise discretion over employment matters was "just the opposite of a uniform employment practice that would provide the commonality needed for a class action," but would instead require consideration of "literally millions of employment decisions at once." Id. at 2552, 2554.  In contrast, here a single District policy, one that allegedly precludes rather than permits

discretion, is definable and equally applicable to members of this properly articulated class. Indeed, underlying every class member's claim is the issue of whether Defendants implemented a policy that circumvented IDEA's requirements with respect to related services.  Thus, with respect to the alleged violations of IDEA, resolution of this issue will "generate [a] common answer[]" as to whether the CSE, which necessarily includes a disabled student's parent or parents, was precluded from making an individualized assessment of need, and whether students were denied necessary related services as a result.  Wal-Mart, Inc., 121 S. Ct. at 2551; cf. D.L. v. District of Columbia, 713 F.3d 120, 127-28 (D.C. Cir. 2013) (class certification improper where plaintiffs alleged violations of various IDEA requirements, but failed to identify a single or uniform policy or practice that bridged all the individual claims).

Similarly, the commonality requirement is also satisfied with respect to Plaintiffs' Rehabilitation Act claim.  Although a finding of intentional discrimination under Section 504 of the Rehabilitation Act requires something more than proof of a mere violation of IDEA, meaning more than evidence of a faulty IEP, the question common to the class will be whether the District acted in bad faith or with gross misjudgment in enacting this policy. See Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Central Sch. Dist., 368 F. Supp. 2d 313, 334 (S.D.N.Y. 2005); see generally Butler v. South Glens Falls Cent. Sch. Dist., 106 F. Supp. 2d 414, 420 (N.D.N.Y. 2000) (intentional discrimination properly inferred from enactment of policy with deliberate indifference to the "strong likelihood" that a violation of federally protected rights will result).

Thus, because Plaintiffs are challenging a single, definable policy of Defendants, they have sufficiently satisfied Rule 23(a)(2)'s requirement of identifying a common

20

question warranting class treatment.  Wal-Mart, Inc., 131 S. Ct. at 2556 (reaffirming that only a single question is needed); Baby Neal, 43 F.3d at 57; Louis M., 113 F.R.D. at 136.

    *ii.*  *Typicality*

  The typicality requirement is driven by factors similar to those underlying the issue of commonality. Brown, 609 F.3d at 475; Marisol A., 126 F.3d at 376.  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993); Glatt v. Fox Searchlight Pictures, Inc., – F. Supp. 2d –, 2013 WL 2495140, *16 (S.D.N.Y. 2013).  Here, the named Plaintiffs allege that they were harmed by, as concluded above, the same allegedly improper policy that undermines the claims of all proposed class members.  The fact that Plaintiffs are seeking additional relief, specifically compensatory services, on top of and outside the scope of the class action claims does not undermine this conclusion.

    *iii.*  *Numerosity*

  Plaintiffs must also establish that the proposed class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).  This criteria requires neither the complete impossibility of joinder nor evidence of the exact class size.  Robidoux, 987 F.2d at 935; Glatt, 2013 WL 2495140 at *14; D.S. ex rel. S.S. v. N.Y. City Dep't of Educ., 255 F.R.D. 59, 70-71 (E.D.N.Y. 2008).  A reasonably estimated class of forty or more members raises a presumption of numerosity.  Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995), *cert denied*, 515 U.S. 1122 (1995).

  Plaintiffs assert that the number of children who are classified in the District as

educationally disabled and receive related services is too numerous for joinder. (Pls' Mem of Law at 4.)  Notably, where, as here, evidence regarding proposed class members is within the sole possession of defendants or membership in the proposed class is revolving, numerosity is generally recognized.  J.S. ex rel. N.S., 2006 WL 581187 at *4.  Moreover, Plaintiffs highlight Defendants' own submissions recognizing that there are over 5,700 students classified as disabled in the District, many of whom receive one or more related services. (Pls' Reply Mem of Law at 10-11 (citing Aff. of Kim Curtin ¶ 10, Docket No. 24-2).) The Court therefore finds the numerosity requirement satisfied.

> iv.   *Adequacy*

To determine whether a named plaintiff "will fairly represent and adequately protect the interests of the class" as required by Rule 23(a)(4), courts inquire whether: "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000); DeMarco v. Robertson Stephens Inc., 228 F.R.D. 468, 471 (S.D.N.Y. 2005).  Initially, as noted above, the fact that Plaintiffs are seeking additional relief for the named student does not in this case render their interests antagonistic to those of the class. See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990), *cert denied*, 498 U.S. 1025 (1991) (mere existence of individualized factual questions regarding class representative insufficient to defeat certification). In order for compensatory services to be warranted, Plaintiffs must first establish the claim underlying the class request for injunctive relief: that Defendants instituted a policy improperly that adversely affects the CSE's ability to make a determination of individual need, the rights of parents to participate in that

22

determination, and the students' right to receive services.  Thus, any defense unique to the individual claim for compensatory services will not distract from the pursuit of this class relief. Gary Plastic Packaging Corp., 903 F.2d at 180;  Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 344 n.102 (S.D.N.Y. 2004).  Finally, Defendants do not dispute that Plaintiffs' attorneys are qualified and have sufficient experience to conduct the litigation.  (Defs' Mem of Law at 20 n. 17.) The Court finds that the requirements of Rule 23(a)(4) are met.

3.    Rule 23(b)

Although Plaintiffs have established the four Rule 23(a) prerequisites, they must also show that the proposed class action falls within one of the three categories described in Rule 23(b).  Plaintiffs assert that certification is proper under either Rule 23(b)(2) (class-wide injunctive or corresponding declaratory relief appropriate) or Rule 23(b)(3) (superiority of class action to other methods).

Rule 23(b)(2) allows certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Such is the case here, where Plaintiffs seek only injunctive and declaratory relief with respect to the class claims.  Defendants oppose this categorization, raising the same argument which they use to oppose a finding of commonality: that injunctive relief would need to be specified to the unique circumstances of each student class member.  As framed in the Complaint, however, the relief sought by Plaintiffs is more broadly applicable.  Plaintiffs seek a declaration that Defendants' policy *precludes* individualized assessment, as well as sufficient parental involvement and the implementation of services, and should therefore be discontinued, not that prior individualized assessments with respect to related services

23

were improper.  A determination that such declaratory and injunctive relief is warranted would not therefore require consideration of the sufficiency of the services included in the individual IEPs of the student class members, instead the ordered relief, if warranted, would be equally applicable to all members of the proposed class.

In light of the conclusion that certification is proper under Rule 23(b)(2), the Court will not address whether certification would also be proper under Rule 23(b)(3).

## IV. CONCLUSION

Based on the foregoing, the Court declines to exercise its discretion to stay determination of class certification, and Defendants' cross-motion is denied.  Plaintiffs have met their burden of establishing by a preponderance of the evidence that the requisites of Rule 23 have been met, and therefore their motion is granted.  The Court therefore orders that the class of "children, and parents of children, between the ages of 5 and 21 residing in the Buffalo City School District, present and future, who are classified as disabled per the definition in [IDEA] . . . and receive related services" to be certified under Rule 23(a) and (b)(2) with respect to Plaintiffs' claims for injunctive and declaratory relief.  The parties are nonetheless reminded that "[c]lass certification decisions by their nature are conditional, and a court has the power to alter or modify the class description if subsequent events suggest that it is appropriate to do so." Levy, 780 F.Supp. at 905; see Fed. R. Civ. P. 23(c).

## V. ORDERS

IT HEREBY IS ORDERED that Plaintiffs' Motion for Class Certification (Docket No. 5) is GRANTED;

FURTHER, that Defendants' Cross-Motion for a Stay of the Class Certification Determination (Docket No. 24) is DENIED;

FURTHER, that the proposed class is certified pursuant to Rule 23(b)(2), consistent with the foregoing decision;

FURTHER, that, pursuant to Fed. R. Civ. P. 23(c)(1)(B), the firm of Goldstein, Ackerhalt & Pletcher, LLP is appointed class counsel.

SO ORDERED.

Dated: June 30, 2013
    Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court